Duane **HEBERT**, Plaintiff,

v.

**WINONA COUNTY, et al., Defendants.**

**Civ. No. 15–469 (RHK/JJK).**

United States District Court,
D. Minnesota.

Signed June 26, 2015.

---

Erick G. Kaardal, Mohrman, Kaardal & Erickson, P.A., Minneapolis, MN, for Plaintiff.

Cally R. Kjellberg–Nelson, Dyan J. Ebert, Quinlivan & Hughes, P.A., Saint Cloud, MN, for Defendants.

## MEMORANDUM OPINION AND ORDER

RICHARD H. KYLE, District Judge.

### INTRODUCTION

Plaintiff Duane Hebert was terminated from his position as Winona County Administrator in May 2014. In this case, he alleges five counts against Defendants[1] arising from that termination. Specifically, he alleges Defendants (1) violated his procedural due process rights, in violation of the United States and Minnesota Constitutions (Counts I and II); (2) discriminated against him on the basis of marital status, in violation of the Minnesota Human Rights Act (MHRA), Minn.Stat. § 363A.08, subd. 2 (Count III); (3) breached his contract (Count IV); and (4) defamed him (Count V). Defendants filed the instant Motion to Dismiss Counts I and II, to the extent those Counts rely on the Minnesota Constitution, and Counts IV and V. For the following reasons, Defendants' Motion will be granted.

### BACKGROUND

The following facts are recited as alleged in the Complaint.

Hebert served as Winona County Administrator from August 2009 until May 2014, when his employment was terminated. (Compl. ¶ 1.) In 2013, the County began exploring a solar energy project. (*Id.*, ¶ 41.) One company eventually mentioned as a possible financial backer of the project was NES, which employed Hebert's wife as an independent contractor. (*Id.*, ¶¶ 23, 27, 41, 46.) The County engaged in some correspondence regarding NES's financing proposal, but signed a letter of intent with another company and ultimately withdrew from the solar project altogether. (*Id.*, ¶¶ 48, 51, 55.)

On March 25, 2014, Winona County's Assistant County Administrator—Personnel Director Maureen Holte sent Hebert a letter putting him on administrative leave. (*Id.*, ¶ 76.) The letter stated that the Winona County Board ("Board") would be meeting on April 1, 2014 and the meeting would be closed unless Hebert contacted Holte by March 31. (*Id.*) Hebert did not respond, and, though he attempted, was not allowed to attend the meeting. (*Id.*, ¶ 79.) At the meeting, the Board hired Lockridge, Grindal, Nauen, P.L.L.P. to review personnel activities and make legal and ethical findings related to the solar project. (*Id.*, ¶¶ 56, 81.)

A month later, on May 5, 2014, the Board voluntarily disclosed the report ("Report") prepared by that firm. (*Id.*, ¶¶ 58, 66.) The Report stated that Hebert deliberately did not disclose " 'NES's likely involvement in the solar project at the time the project was presented to the Board as the project of another company . . .' Thus . . . Hebert's conduct does not meet 'the highest standards of ethical conduct' . . ." and Herbert " 'arguably created

---

1. Defendants are Winona County and, in their official capacities, current or former Winona Board of Commissioner members James G. Pomeroy, Wayne T. Valentine, Steve E. Jacob, Greg D. Olson, and Marcia L. Ward.

a violation of the public trust.'" (*Id.,* ¶ 91.)

The Board terminated Hebert's employment on May 6, 2014, in a letter explaining he was fired "for 'malfeasance and/or gross misconduct that does not meet the highest ethical standards expected of a County employee.'" (*Id.,* ¶¶ 93, 95.) Prior to dismissal, no one met with Hebert to notify him of the charges against him, explain the relevant evidence, or give him the opportunity to respond to the charge. (*Id.,* ¶ 82.) Hebert subsequently asked for a post-termination name-clearing hearing. (*Id.,* ¶ 128.) The County responded that it would hold a *pre*-termination hearing on June 24, 2014, which Hebert clarified should be a *post*-termination hearing to clear his name. (*Id.,* ¶ 129.) On June 19, 2014, the County cancelled the hearing, which was never rescheduled. (*Id.,* ¶¶ 130–31.)

Hebert filed this action on January 21, 2015, in Minnesota state court. Defendants removed it and answered the Complaint on February 9, 2015. They subsequently filed this Motion to Dismiss Counts I and II, to the extent those Counts are based on the Minnesota Constitution, and Counts IV and V. The Motion has been fully briefed, a hearing was held on May 6, 2015, and the Motion is now ripe for disposition.

## STANDARD OF DECISION

■ Defendants move to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and for failure to state a claim under Rule 12(b)(6). As an initial matter, Defendants technically cannot file a 12(b) motion because they have already answered the Complaint. Fed.R.Civ.P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."). Any party, however, may challenge subject-matter jurisdiction at any time, pursuant to Rule 12(h)(3), *see S.D. Farm Bureau, Inc. v. Hazeltine,* 340 F.3d 583, 591 (8th Cir.2003), and the Court construes the challenge as having been made under that rule, *Brown v. Grandmother's, Inc.,* No. 4:09CV3088, 2010 WL 611002, at *3 (D.Neb. Feb. 17, 2010). Similarly, the Court construes Defendants' motion to dismiss for failure to state a claim as having been made under Rule 12(c). *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990). The Court applies the 12(b)(1) standard to the Rule 12(h)(3) argument, *Berkshire Fashions, Inc. v. M.V. Hakusan II,* 954 F.2d 874, 879 n. 3 (3d Cir.1992); *Gates v. Black Hills Health Care Sys.,* 997 F.Supp.2d 1024, 1029 (D.S.D.2014), and the 12(b)(6) standard to the Rule 12(c) argument, *Ashley Cnty., Ark. v. Pfizer, Inc.,* 552 F.3d 659, 665 (8th Cir.2009).

■ The Supreme Court set forth the standard for evaluating a motion to dismiss under Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 547, 127 S.Ct. 1955. A "formulaic recitation of the elements of a cause of action" will not suffice. *Id.* at 555, 127 S.Ct. 1955. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955).

■ When reviewing a motion to dismiss, the Court "must accept [the] plaintiff[s]'s specific factual allegations as true but [need] not ... accept a plaintiff[s]'s legal conclusions." *Brown v. Medtronic, Inc.,* 628 F.3d 451, 459 (8th Cir.2010) (cit-

ing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). The complaint must be construed liberally, and any allegations or reasonable inferences arising therefrom must be interpreted in the light most favorable to the plaintiffs. *Twombly,* 550 U.S. at 554–56, 127 S.Ct. 1955. A complaint should not be dismissed simply because the Court is doubtful the plaintiffs will be able to prove all of the necessary factual allegations. *Id.* at 556, 127 S.Ct. 1955. Accordingly, a well-pleaded complaint will survive a motion to dismiss even if it appears recovery is very remote and unlikely. *Id.* "Finally, the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir.2009).

▮▮▮▮ Subject-matter jurisdiction can be challenged on the face of the Complaint or on the factual truthfulness of the allegations. *Titus v. Sullivan,* 4 F.3d 590, 593 (8th Cir.1993). In a facial challenge, "all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id.* (internal citation omitted); *see also Osborn v. U.S.,* 918 F.2d 724, 729 n. 6 (8th Cir.1990).

## ANALYSIS

### 1. Counts I and II (Motion to Dismiss for Failure to State a Claim)

▮▮▮ In Counts I and II, Hebert alleges Defendants violated his right to procedural due process under the United States and Minnesota Constitutions by firing him without advising him of the charges and allowing for a public hearing; accusing him of things so damaging to his reputation that it is difficult or impossible to escape the stigma; and not providing him a name-clearing hearing. U.S. Const., amend. XIV; Minn. Const. Art. 1, § 7. Defendants move to dismiss Hebert's claims under Counts I and II only to the extent the claims rely on the Minnesota Constitution. And they should be dismissed, because, as Defendants correctly argue, there is no private right of action for a violation of the Minnesota Constitution. *Danforth v. Eling,* No. A10–130, 2010 WL 4068791, at *6 (Minn.Ct.App. Oct. 19, 2010); *Mlnarik v. City of Minnetrista,* No. A09–910, 2010 WL 346402, at *1 (Minn.Ct.App. Feb. 2, 2010) (internal citations omitted); *see also Jihad v. Fabian,* Civ. No. 09–1604, 2011 WL 1641767, at *3 (D.Minn. May 2, 2011) (Nelson, J.) ("The Minnesota Legislature has not enacted a statute similar to 42 U.S.C. § 1983, which allows civil lawsuits for violations of the U.S. Constitution. Nor has any Minnesota court recognized a private cause of action for a violation of the Minnesota Constitution.... Thus, Plaintiff's claims under the Minnesota Constitution must be dismissed.").

▮▮▮ Hebert does not dispute that there is no private cause of action under the Minnesota Constitution; instead, he responds by requesting a writ of mandamus to remedy violations of his rights to pre-termination and post-termination hearings. But a court will only issue a writ of mandamus if, among other things, there is no other adequate means to achieve the desired relief. *Hollingsworth v. Perry,* 558 U.S. 183, 130 S.Ct. 705, 710, 175 L.Ed.2d 657 (2010) (per curiam) (internal quotations, alterations, and citation omitted); *see also Coyle v. City of Delano,* 526 N.W.2d 205, 207 (Minn.Ct.App.1995). Here, Hebert could achieve his desired relief through his still-pending claims under the United States Constitution (Counts I and II). And Hebert's request fails for a more basic reason: this Court lacks the power to issue a writ of mandamus compelling a *state* actor to act. *See* 28 U.S.C. § 1361 ("The district courts shall have

original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the *United States or any agency thereof* to perform a duty owed to the plaintiff.") (emphasis added); *Noble v. Cain*, 123 Fed.Appx. 151, 152–53 (5th Cir. 2005) ("[M]andamus relief ... is not available to federal courts to direct state officials in the performance of their duties and functions."); *Davis v. Lansing*, 851 F.2d 72, 74 (2nd Cir.1988); *Van Sickle v. Holloway*, 791 F.2d 1431, 1436 (10th Cir.1986). Accordingly, the Court will not grant a writ of mandamus, denies Hebert's request to amend his Complaint to seek a writ of mandamus as a remedy for violations of the United States Constitution, and dismisses Counts I and II to the extent they are based on the Minnesota Constitution.

### 2. Counts IV and V (Motion to Dismiss for Lack of Subject–Matter Jurisdiction)

Hebert also brings claims for breach of contract (Count IV) and defamation (Count V). Specifically, he alleges Defendants breached his employment contract—which provided that the County's right to terminate his employment was subject to statutory requirements (Compl. ¶ 175)—in two ways: (1) by not providing a pre-termination public hearing, in violation of Minn. Stat. § 375A.06, subd. 1, and (2) by firing him because of his marital status, in violation of Minn.Stat. § 363A.08, subd. 2.[2] He further alleges Defendants defamed him by falsely stating he had committed "malfeasance and/or gross misconduct." (Compl. ¶¶ 189, 210.) Defendants respond that these claims must be dismissed for lack of subject-matter jurisdiction.

■■■■ Under Minnesota law, absent statutory authority for a different process,

a county's decision to terminate an employee can only be challenged by writ of certiorari. *Willis v. Cnty. of Sherburne*, 555 N.W.2d 277, 282 (Minn.1996). The Minnesota Supreme Court made clear in *Willis* that a claim does not need to be styled as a challenge to the termination decision for the Court to view the claim as such. *Id.* at 282. As that court explained in the context of a breach of contract claim,

> Regardless that the claim is cloaked in the mantle of breach of contract, when the alleged breach of the employment contract of a governmental employee results in termination of the claimant's employment by an executive body which does not have statewide jurisdiction alone—for example, a county—the claimant may contest the employer's action by certiorari alone....

*Id.; see also Williams v. Bd. of Regents of Univ. of Minn.*, 763 N.W.2d 646 (Minn.Ct. App.2009); *Grundtner v. Univ. of Minn.*, 730 N.W.2d 323, 332 (Minn.Ct.App.2007). A writ of certiorari is the appropriate process when the plaintiff's claim "implicates an executive body's decision to terminate an employee." *Lueth v. City of Glencoe*, 639 N.W.2d 613, 617 (Minn.Ct.App.2002). In other words, a claim must follow the certiorari procedure, instead of proceeding as a civil action in district court, if "an inquiry into the facts surrounding [the claim] would necessarily involve an inquiry into the discretionary decision of the [county] to terminate [Hebert]." *Williams*, 763 N.W.2d at 652.

■■■■ Here, Hebert's breach of contract and defamation claims both implicate the County's decision to terminate his employment. First, his breach of contract claim

---

**2.** He also alleges his contract was breached when he did not receive a post-termination hearing, but he cites no Minnesota Statute requiring such a hearing. The statute he con- sistently cites for that authority, Minn.Stat. § 375A.06, only provides for a *pre*-termination hearing.

"is inevitably centered on the executive body's decision to discharge [him]." *Tischer v. Hous. & Redev. Auth. of Cambridge,* 693 N.W.2d 426, 431–32 (Minn. 2005). As to his argument that his contract was breached when he was fired because of his marital status, it would be impossible to decide that issue without asking *why* he was fired. As to his argument that his contract was breached when he was fired without getting a pre-termination hearing, *Willis* is instructive. In *Willis,* the Plaintiff pleaded in his complaint that the county had "breached the employment contract by terminating [him] without following the procedures and policies set out in the employment contract." 555 N.W.2d at 280. That court held his claim was related to termination such that it was subject to the certiorari requirement, explaining that "Willis would have us believe that his breach of employment contract count does not implicate the county's decision to discharge him. Just how a discharged employee can demonstrate the county's breach of termination and layoff procedures *without* implicating the county's decision to discharge escapes us." *Id.* at 282. The same logic applies here, where Hebert claims the County failed to follow the required procedure of holding a pre-termination hearing.

Second, Hebert's defamation claim implicates the termination decision. He alleges he was defamed when the County said he was fired for malfeasance and gross misconduct. "To determine if [the County's] statement[s] [were] false, the reasons for [Hebert's] termination must be determined." *Grundtner,* 730 N.W.2d at 333. Unlike in *Willis,* where Willis's defamation claim arose from statements made beginning more than a year before his termination, 555 N.W.2d at 282, here, the defamation claim is based on statements that "directly pertain to the reason for [Hebert's] termination," *Grundtner,* 730 N.W.2d at 333.

The Court disagrees with Hebert's argument that statutory authority provides for a process other than certiorari. He relies on the MHRA, Minn.Stat. § 363A.33, subd. 1(3), which provides, in relevant part, that

> [t]he commissioner or a person may bring a civil action seeking redress for an unfair discriminatory practice directly to district court. In addition, a person may bring a civil action: ... (3) after 45 days from the filing of a charge pursuant to section 363A.28, subdivision 1, if a hearing has not been held pursuant to section 363A.29 or if the commissioner has not entered into a conciliation agreement to which the charging party is a signator. The charging party shall notify the commissioner of an intention to bring a civil action, which shall be commenced within 90 days of giving the notice.

Hebert claims the language "seeking redress for an unfair discriminatory practice" and "a person may bring a civil action" mean that *any* claim connected to discriminatory conduct falls under the statute. That includes, in his view, his breach of contract and defamation claims, because, he asserts, both are ultimately tied to his being fired because of his marital status.

But Hebert misreads the statute, which explains *when* to bring a civil action for violation of an *"unfair discriminatory practice."* The phrase "unfair discriminatory practice" is specifically defined in Minn.Stat. § 363A.03, subd. 48 as "any act described in sections 363A.08 to 363A.19 and 363A.28, subdivision 10." The definition bans employment discrimination on the basis of marital status, § 363A.08, subd. 2, and other protected statuses, but does not refer to breach of contract or defamation. Nothing in the statute suggests the phrase "a person may bring a civil action" is intended to expand the

scope of the statute's coverage beyond an "unfair discriminatory practice" as statutorily defined. Rather, when read in context of the subdivision, that phrase clearly does no more than preface a list of ways a plaintiff can bring a civil action for an "unfair discriminatory practice" when he did not do so at the outset of his case. Hebert has cited no case, and the Court is not aware of one, supporting Hebert's creative reading of Minn.Stat. § 363A.33, subd. 1(3), and in fact, *Willis* goes against Hebert's interpretation. *Willis* held the breach of contract claim should have proceeded by writ of certiorari while also holding that an MHRA claim could be brought in district court. 555 N.W.2d at 282–83. In other words, the MHRA was not so expansive as to sweep in the breach claim. Thus, as to Hebert's breach of contract and defamation claims, the MHRA does not provide the statutory authority for a process other than a writ of certiorari, and as such, the Court will dismiss Counts IV and V for lack of subject-matter jurisdiction.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. No. 7) is **GRANTED.** Counts I and II, to the extent they allege claims under the Minnesota Constitution, and Counts IV and V are **DISMISSED WITH PREJUDICE.**[3]

---

**3.** To be clear, the Court has neither commented on nor dismissed Counts I and II to the extent they are based on the United States Constitution.